RONALD SELF, DONNA K. SELF REYNOLDS, AND THE ESTATE OF COLEMAN FRANKLIN SELF, BY ITS EXECUTIVES, RONALD SELF AND DONNA K. SELF REYNOLDS, PLAINTIFFS V. ROBERT W. YELTON, DEFENDANT

No. COA09-207

(Filed 5 January 2010)

**1. Attorneys— professional negligence—summary judgment—insufficient evidence of proximate cause**

The trial court did not err by granting defendant attorney summary judgment on plaintiffs' claims for professional negligence, fraud, constructive fraud, and obstruction of justice because plaintiffs could not show that the affidavit at issue proximately caused plaintiffs any injury.

**SELF v. YELTON**

[201 N.C. App. 653 (2010)]

**2. Statutes of Limitation and Repose— expired—summary judgment proper**

The trial court did not err in granting summary judgment in favor of defendant attorney where plaintiffs' claims for professional negligence, fraud, and obstruction of justice expired prior to the filing of their complaint.

**3. Fraud— constructive—insufficient evidence of benefit**

The trial court did not err in granting summary judgment in favor of defendant attorney on plaintiffs' claim for constructive fraud because plaintiffs failed to present sufficient evidence that defendant sought to benefit himself in the transaction.

Appeal by plaintiffs from order entered 31 October 2008 by Judge Richard L. Doughton in Cleveland County Superior Court. Heard in the Court of Appeals 3 September 2009.

*Ferguson, Stein, Chambers, Gresham & Sumter, P.A., by John W. Gresham and Tanisha P. Johnson, for plaintiff-appellants.*

*Dean & Gibson, PLLC, by Rodney Dean and Sarah M. Bowman, for defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Ronald Self, Donna K. Self, and the estate of Coleman Self (collectively "plaintiffs") filed this suit against Robert W. Yelton ("defendant") for alleged wrongful acts and omissions by defendant during his representation of Coleman Self ("Coleman"). Plaintiffs contend that defendant's professional negligence, fraud, or breach of duty in representing Coleman proximately caused Coleman's estate and heirs to lose a remaindermen interest in a parcel of real estate. Plaintiffs herein settled a quiet title action to the aforementioned parcel in a prior lawsuit; however, their damage claim is that the settlement obtained in the prior lawsuit was less than would have been obtained but for defendant's negligence, fraud, or breach of duty. The trial court granted defendant summary judgment on plaintiffs' claims for professional negligence, fraud, constructive fraud, and obstruction of justice. We affirm.

## I. BACKGROUND

### A. The Prior Lawsuit: *Conlon v. Self*

In *Conlon v. Self*, No. 03-247, 2003 WL 23109719 (N.C. App. Jan. 6, 2004) [*Conlon*], this Court addressed plaintiffs' claim to a parcel of

property located at 205 Birdie Lane, Shelby, North Carolina (the "Birdie Lane property"). *Conlon* was an action instituted by Frances Self ("Frances"), Coleman's widow, to quiet title to Birdie Lane after Coleman's death in January 2000. Plaintiffs were the defendants in that case. Title to the Birdie Lane property was the sole dispute in *Conlon*, and after *Conlon* was decided, the Birdie Lane property was the subject of a consent judgment dated 25 June 2004. In the settlement, plaintiffs herein: (1) quitclaimed their interest in the Birdie Lane property; and (2) received a right of first refusal to buy Birdie Lane at the end of Frances' possession, or if the property sold to a third party, a right to receive 30% of the sales proceeds. In releasing their claims in *Conlon*, plaintiffs' consent judgment provided in relevant part:

> [Plaintiffs], being of lawful age, for the mutual consideration addressed above, . . . [do] hereby and for [our] heirs, executors, administrators[,] successors, agents and assigns release, acquit and forever discharge one from the other, any and all claims which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen or unforeseen damages or loses [sic] and the consequences thereof resulting or to result from the marriage of Coleman Self and Frances Self, or any transactions between them, related to the marriage or not, and specifically all claims related to the allegations in the lawsuit contained in file #01 CVS 1852 or any claims regarding property owned by the parties together or separately.

Coleman and Frances purchased the Birdie Lane property as tenants by the entirety in March 1995. The day of the Birdie Lane closing, defendant prepared and Frances executed a standard statutory form power of attorney (the "March 1995 power of attorney") naming Coleman her attorney-in-fact. The March 1995 power of attorney did not provide Coleman the power to gift Frances' individual property to himself.

In 1999, just prior to his death, Coleman attempted to use the March 1995 power of attorney to transfer, without consideration, Frances' entireties interest in the Birdie Lane property to himself. Coleman retained an attorney other than defendant to prepare a deed giving him sole ownership of Birdie Lane, and on 2 June 1999, Coleman signed the deed "as 'Frances S. Kuykendall, by Coleman Franklin Self, POA.'" *Conlon*, No. 03-247, 2003 WL 23109719, at *1.

Coleman died on 2 January 2000. His probated will, which was prepared by defendant in November 1997 (the "November 1997 will"), provided that Frances would be granted a life estate in Coleman's real property with the remainder going to Coleman's children, Ronald and Donna Self (the "Selfs").

After Coleman's death in 2000, Peggy Conlon, as attorney-in-fact for Frances,[1] filed the complaint in *Conlon* to quiet title to the Birdie Lane property. Plaintiffs argued in *Conlon* that the June 1999 deed conveyed Coleman sole ownership of the Birdie Lane property. The implication of this argument was that the Birdie Lane property passed to them after Coleman's death by virtue of the November 1997 will. Peggy Conlon argued that the June 1999 deed was null and void because the March 1995 power of attorney did not grant Coleman the ability to gift Frances' property to himself.

On 21 August 2002, the trial court granted Peggy Conlon's motion for summary judgment, and ordered that the June 1999 deed be set aside and cancelled. Plaintiffs appealed the trial court's summary judgment order in *Conlon* to this Court, and after *de novo* review, we affirmed, holding: (1) the March 1995 power of attorney did not authorize Coleman to gift the Birdie Lane property to himself; and (2) because no valuable consideration was paid for the transfer, the June 1999 deed transferring the Birdie Lane property to Coleman individually was a gift not authorized by the March 1995 power of attorney. *Conlon*, No. 03-247, 2003 WL 23109719, at *2-3.

### B. The Current Action: *Self v. Yelton*

On 8 July 2005, after the consent judgment was entered in *Conlon*, plaintiffs filed this action against defendant. In their complaint, plaintiffs state four causes of action: professional negligence, fraud, constructive fraud, and obstruction of justice. Defendant denied liability in his answer, and pled the affirmative defenses of failure to state a claim under Rule 12(b)(6), statute of limitations, and election of remedies.

The timeliness of each of plaintiffs' claims hinges upon the legal significance of an affidavit prepared in July 2002 by defendant (the "July 2002 affidavit"). Peggy Conlon used the July 2002 affidavit to

---

1. Frances created a second power of attorney naming Peggy Conlon her attorney-in-fact on 30 January 1996. A revocation of the power of attorney to Coleman was also executed, but it was never filed. These documents were prepared by defendant, but did not affect our decision in *Conlon*, and are not relevant to the analysis here.

support her motion for summary judgment in *Conlon*. The affidavit states in pertinent part:

2. I have represented Franc[e]s S̈. Self for many years and when she married Coleman F. Self, I began doing legal work for both Mr. and Mrs. Self. I prepared a pre-marital agreement for the Selfs and had prepared various other legal documents on behalf of the Selfs over the years leading up to Mr. Self's death. Sometime in September of 1997 I was asked by Coleman Self to prepare a deed transferring the home owned by Coleman and Franc[e]s Self on 205 Birdie Lane from Coleman F. Self, and wife, Francis S. Self, to Coleman F. Self, individually. I followed his instructions and prepared such a deed and met with Mr. and Mrs. Self to have the deed executed.

3. When I presented the deed to Franc[e]s S. Self, and explained to Mrs. Self the nature of the deed, she refused to sign the deed. She made it very clear to me that she did not wish to transfer the property out of her name to Mr. Coleman F. Self individually.

4. When Franc[e]s Self refused to sign the deed I explained to Mr. and Mrs. Self that I could take no further action with respect to the transfer of the property. It was quite clear that Franc[e]s Self did not desire to transfer the home at 205 Birdie Lane to Coleman Self.

5. At the time that Mr. Self asked me to prepare the deed, the property was owned by Coleman F. Self, and wife Francis S. Self as tenants by the entireties.

Based on the contents of this affidavit, plaintiffs contend that defendant breached an ethical duty to his client, Coleman, and Coleman's beneficiaries, the Selfs, by failing to keep confidential client communications. In revealing these communications by affidavit, plaintiffs contend that defendant "repudiated" Coleman's wishes as shown in his November 1997 will. Plaintiffs argue that the November 1997 will should have left the Selfs a remainder interest in the Birdie Lane property; and therefore, defendant proximately caused plaintiffs' damage by causing their remainder interest in the Birdie Lane property to go to Frances in fee simple.

Plaintiffs further contend that defendant committed fraud, constructive fraud, and obstruction of justice, because the statements made in the affidavit were misleading and false. To support this con-

tention, plaintiffs claim that defendant could not have had the conversations with Frances reported in the July 2002 affidavit due to her mental incompetence at the time the conversations were to have taken place. They also contend that evidence of the incompetence of Frances was not discovered until after the trial court's order granting summary judgment in *Conlon* had been rendered. Plaintiffs allege they discovered documents showing that defendant knew that Frances was experiencing diminished memory and dementia, and this evidence was the basis of a Rule 60 motion in the trial court which was pending at the time *Conlon* was settled.

On 22 April 2008, defendant moved for summary judgment in this case. After hearing arguments from both parties, the trial court granted summary judgment to defendant on 31 October 2008 as to all of plaintiffs' claims. Plaintiffs filed a timely notice of appeal on 21 November 2008. On appeal, plaintiffs argue that the trial court erred by entering summary judgment in defendant's favor on their claims for professional negligence, constructive fraud, fraud, and obstruction of justice.

## II. ANALYSIS

### A. Standard of Review

We review orders granting summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

The initial burden of showing that no issue exists for trial rests on the moving party. *Spaulding v. Honeywell Int'l, Inc.*, 184 N.C. App. 317, 320, 646 S.E.2d 645, 648, *disc. review denied*, 361 N.C. 696, 654 S.E.2d 482 (2007), *reh'g dismissed, cert. denied*, 362 N.C. 177, 657 S.E.2d 667 (2008). A defendant may be entitled to summary judgment upon: " '(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense.' " *Id.* (quoting *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003)). If a moving party shows that no genuine issue of material fact exists for trial, the bur-

den shifts to the nonmovant to adduce specific facts establishing a triable issue. *Jones*, 362 N.C. at 573, 669 S.E.2d at 576.

At the summary judgment hearing in this case, defendant presented extensive evidence that: the July 2002 affidavit did not proximately cause plaintiffs' damages; plaintiffs' claims of professional negligence, fraud, and obstruction of justice are barred by the applicable statutes of limitations; and defendant received no benefit during his alleged wrongful acts, which is an essential element of constructive fraud. Our *de novo* review shows that the facts taken in a light most favorable to plaintiffs fail to establish a triable issue sufficient to overcome these defenses. We conclude summary judgment was properly granted to defendant.

## B. Proximate Cause

[1] An essential element of each of plaintiffs' claims is a showing that defendant proximately caused their damages. *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 601, 534 S.E.2d 233, 237 (2000) (fraud and constructive fraud require showing of proximate cause); *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985) (professional malpractice claim against attorney requires existence of proximate cause); *see Grant v. High Point Reg'l Health Sys.*, 184 N.C. App. 250, 256, 645 S.E.2d 851, 855 (2007) (defendant's argument that proximate cause was not adequately pled in the plaintiff's complaint was held insufficient to warrant a Rule 12(b)(6) dismissal of the plaintiff's obstruction of justice claim), *disc. review improvidently allowed*, 362 N.C. 502, 666 S.E.2d 757 (2008).

Proximate cause is defined as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred[.]" *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984). Thus, before holding a defendant liable for an injury to a plaintiff, it must be shown that defendant's actions were " 'a substantial factor . . . of the *particular* injuries for which plaintiff seeks recovery.' " *Brown v. Neal*, 283 N.C. 604, 611, 197 S.E.2d 505, 509 (1973) (quoting *Gillikin v. Burbage*, 263 N.C. 317, 139 S.E.2d 753 (1965)).

Our Court held in *Conlon* that title to the Birdie Lane property did not pass to the decedent, Coleman, by deed, because the March 1995 power of attorney did not include gifting authority. The opinion does not mention defendant's July 2002 affidavit, because its contents are irrelevant to the legal determination to affirm the trial court's order

voiding the June 1999 deed. This lack of authority is a matter of law and not of fact. Determining title to real estate is evidenced by reference to recorded transactions in the Register of Deeds. Since the property was legally transferred upon Coleman's death to Frances by virtue of operation of law, the conversations between defendant and Frances are not significant. Therefore, plaintiffs cannot show how the affidavit proximately caused any injury. Given this Court's decision in *Conlon*, summary judgment on plaintiffs' claims with respect to the July 2002 affidavit was proper.

### C. Statutes of Limitations

**[2]** Claims for professional negligence are "deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action[,]" and the statute of repose bars actions accruing four years prior to the filing of a claim. N.C. Gen. Stat. § 1-15(c) (2009). Fraud and obstruction of justice must be brought within three years from the time the cause of action accrues, and an action accrues when a plaintiff becomes aware or reasonably should have become aware of the fraud or harm. N.C. Gen. Stat. § 1-52(9), (16) (2009).

Here, plaintiffs filed their complaint against defendant on 8 July 2005. The last act or omission by defendant alleged in plaintiffs' complaint, outside the July 2002 affidavit, is defendant's preparation of the November 1997 will. Since plaintiffs' claims for professional negligence, fraud, and obstruction of justice expired prior to the filing of their complaint in this action, summary judgment was proper as to these claims. These assignments of error are overruled.

### D. Constructive Fraud

**[3]** To demonstrate a prima facie claim for constructive fraud, a plaintiff must show: "(1) facts and circumstances creating a relation of trust and confidence; (2) which surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship; and (3) the defendant sought to benefit himself in the transaction." *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 32, 581 S.E.2d 452, 462 (2003).

With respect to the third element, this Court has held that "payment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage[.]" *NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 114, 535 S.E.2d 597, 602 (2000); *see Sterner v. Penn*, 159 N.C. App.

626, 583 S.E.2d 670 (2003) (brokers receiving commissions on sales insufficient benefit to support constructive fraud).

Moreover, "[t]he benefit sought by the defendant must be more than a continued relationship with the plaintiff." *Sterner*, 159 N.C. App. at 631, 583 S.E.2d at 674; *see Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997) (a defendant's continued business transactions with a plaintiff were not a sufficient benefit to the defendant to support a claim of constructive fraud).

Here, plaintiffs argue that "[t]he evidence presented supports [p]laintiffs' position that [d]efendant has violated his duty to Coleman Self, his estate and heirs all for the betterment of maintaining his continued friendship and legal relationship with Frances Self and Peggy Conlon." Plaintiffs argue in particular that defendant benefitted by serving the interests of Peggy Conlon and Frances over Coleman's interests.

In support of this theory, plaintiffs rely exclusively on an unpublished federal district court case, *Schmidt v. Wachovia Bank*, No. 3:08-CV-185, 2008 WL 5396684 (W.D.N.C. Dec. 23, 2008). While federal court cases deciding state law issues may sometimes be persuasive, they are not precedential. *Huggard v. Wake County Hospital System*, 102 N.C. App. 772, 775, 403 S.E.2d 568, 570 (1991), *aff'd*, 330 N.C. 610, 411 S.E.2d 610 (1992). However, even if we were to apply *Schmidt*, a reading of the district court's opinion shows that it found that the defendant actually acquired a financial benefit from its actions—not merely a benefit of helping a preferred client at the plaintiff's expense. *Schmidt*, No. 3:08-CV-185, 2008 WL 5396684, at *2 ("defendant allegedly benefitted *financially* by not hedging [the plaintiff's] stock") (emphasis added). Therefore, even if *Schmidt* were persuasive authority for this Court, its conclusion is inapplicable to plaintiffs' current constructive fraud argument.

Applying plaintiffs' complaint to the controlling case law collected above, plaintiffs have failed to show that defendant received anything other than attorney fees and perhaps a continued "friendship" with Peggy Conlon and Frances. As this Court has previously held, these benefits are insufficient to support a cause of action for constructive fraud. *See Sterner*, 159 N.C. App. at 631, 583 S.E.2d at 674; *NationsBank*, 140 N.C. App. at 114, 535 S.E.2d at 602.

Moreover, even assuming that Peggy Conlon and Frances were advantaged by defendant's joint representation of Coleman and Frances, the advantage would stem from the failure of the March 1995

power of attorney to include a gift provision. This creates two bars to plaintiffs' claim for constructive fraud: (1) the statute of limitations for constructive fraud is ten years, and plaintiffs' complaint was not filed until 8 July 2005; and (2) defendant prepared the March 1995 power of attorney for Frances, and therefore, defendant did not breach a fiduciary duty to Coleman at that time. *Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 403, 653 S.E.2d 181, 185 (2007) (statute of repose for constructive fraud is ten years), *disc. review denied*, 362 N.C. 361, 663 S.E.2d 316 (2008).

Since plaintiffs have failed to prove the benefit element of constructive fraud, the trial court did not err in granting defendant summary judgment on this claim. This assignment of error is overruled.

## III. CONCLUSION

Our *de novo* review of the record shows that defendant presented sufficient evidence at trial to show that no genuine issue of material fact exists; and therefore, the trial court properly granted defendant summary judgment on plaintiffs' claims for professional negligence, fraud, constructive fraud, and obstruction of justice. Accordingly, the order of the trial court is

Affirmed.

Judges STEPHENS and BEASLEY concur.