**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1985
_____

BRIANNA APFELBAUM KULA; LEAH APFELBAUM; and JONSIDNEY
APFELBAUM, Individually and as Co-Administrators of the Estate of Michael M.
Apfelbaum, Deceased and Individually and as Co-Administrators of the Estate of
Christina S. Apfelbaum, deceased,

　　　　　　　　　　　　　　　　　　　　　　　　Appellants

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:17-cv-02122)
District Judge: Hon. Matthew W. Brann
_____

Submitted Under Third Circuit LAR 34.1(a)
March 24, 2022

Before: BIBAS, MATEY, and PHIPPS, *Circuit Judges.*

(Filed: May 2, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not
constitute binding precedent.

MATEY, *Circuit Judge*.

The estates of Michael Apfelbaum and his wife ("the Estates") sued the United States, alleging negligent air traffic control caused their fatal airplane crash. The District Court entered judgment against the Estates. Seeing no clear error, we will affirm.

## I.

### A.    The Allegations

Apfelbaum, the pilot, along with his wife and father-in-law departed Florida headed to Pennsylvania. Over North Carolina, Apfelbaum contacted air traffic controller Kendall Garland and advised that worsening weather conditions required flying with only cockpit instrumentation. Garland offered instructions to help align the plane for landing, but Apfelbaum struggled to follow and reported disorientation. Garland recommended Apfelbaum try no-gyro turns[1] to help his descent. Apfelbaum agreed and followed Garland's commands but ended the turns without Garland's assistance.

Moments later, Garland informed Apfelbaum of a "low altitude alert." (App. at 11.) Apfelbaum did not reply, so Garland instructed him to climb to 4,000 feet. Eventually, Apfelbaum asked if there was a nearby field. About two minutes later, the aircraft crashed.

### B.    The Lawsuit

The Estates sued, alleging that Garland negligently caused the accident. The case proceeded to a bench trial where, after the close of the Estates' case, the United States

---

[1] A no-gyro turn requires a pilot to follow the verbal directions of an air traffic controller to turn the plane.

moved for entry of judgment on partial findings under Rule 52(c). The District Court granted the motion, and the Estates appeal. Seeing no clear error, we will affirm.[2]

## II.

"[A]lthough we have plenary review over the legal question of the nature and extent of the duty of due care, we are bound to sustain the [District Court's] factual findings unless . . . clearly erroneous." *Andrews v. United States*, 801 F.2d 644, 646 (3d Cir. 1986) (cleaned up). So, we review the factual findings underlying the District Court's determinations of negligence and contributory negligence for clear error. *See In re Moran Towing Corp.*, 497 F.3d 375, 377 (3d Cir. 2007); *Srein v. Frankford Tr. Co.*, 323 F.3d 214, 224 (3d Cir. 2003). "For a finding to be clearly erroneous, we must be left with the definite and firm conviction that a mistake [was] committed." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010). We review a district court's interpretation of Rule 702 de novo. *In re TMI Litig.*, 193 F.3d 613, 666 (3d Cir. 1999). But we review its ultimate ruling on the admissibility of expert testimony for abuse of discretion. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 n.15 (3d Cir. 2018).

### A.    Negligence

Negligence[3] "is the failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions." *Hart v. Ivey*, 420 S.E.2d 174,

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1346(b)(1) and we have jurisdiction under 28 U.S.C. § 1291.

[3] The Federal Tort Claims Act provides that the United States may be liable "for injury . . . caused by the negligent or wrongful act . . . of any employee of the Government while acting within the scope of his office . . . where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission

177–78 (N.C. 1992). Negligence requires the plaintiff to show the familiar elements of duty, breach, causation, and damages. *See Hamby v. Thurman Timber Co.*, 818 S.E.2d 318, 323 (N.C. Ct. App. 2018). The Estates allege that Garland sent Apfelbaum "on a dizzying series of dangerous maneuvers and turns," causing the crash. (Opening Br. at 4.) They advance three theories, but none were erroneously evaluated by the District Court.[4]

### 1. Heading

First, the Estates allege that Garland's instructions took Apfelbaum "radically off-course." (Opening Br. at 29.) The District Court dismissed this theory because the Estates failed to show that Garland breached a duty or that the instruction proximately caused the crash.

This decision was not clearly erroneous. First, the District Court correctly concluded that Garland's instruction did not exceed the parameters allowed by federal law. *See* FAA, J.O. 7110.65Z, Air Traffic Control Order ¶ 5-9-2 (2021). Second, the Estates offered no evidence that the instructions were unsafe. And even if there was a breach of duty, the evidence did not show the instructions proximately caused the crash. *See Seraj v. Duberman*, 789 S.E.2d 551, 557 (N.C. Ct. App. 2016). Taken together, these conclusions do not leave a "definite and firm conviction that a mistake [was] committed." *EBC*, 618 F.3d at 273.

---

occurred." 28 U.S.C. § 1346(b)(1). We apply the law of North Carolina, where Garland's actions occurred. *See Rodriquez v. United States*, 823 F.2d 735, 739 (3d Cir. 1987).

[4] In federal aviation accident cases, "federal law establishes the applicable standards of care," *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999), while state law "govern[s] the other negligence elements (breach, causation, and damages)," *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 125–26 (3d Cir. 2010).

2. Emergency

The Estates argue that Garland negligently failed to treat Apfelbaum's situation as an emergency. The District Court dismissed this theory, again finding the Estates failed to show breach or proximate cause. We agree that causation defeats this claim. Because even assuming the controller perhaps should have recognized Apfelbaum's disorientation, the Estates do not explain how that possible breach made a difference. Once a controller declares an emergency, he must "select and pursue a course of action which appears . . . most appropriate." J.O. 7110.65Z ¶ 10-1-1(d). In other words, the regulations require no specific action. *See id.* And the Estates do not explain how declaring an emergency would have prevented the crash. So even if Garland breached his duty, that breach did not cause the crash.

3. No-Gyro Turn

The Estates allege that Garland inappropriately guided the no-gyro turns. The District Court found that while Garland breached his duty, the Estates failed to show proximate cause. That is not clearly erroneous. Garland appeared to violate federal regulations, *see* J.O. 7110.65Z ¶ 5-10-3, but there was no evidence that the turns caused the crash. Ultimately, the pilot "is in command of the aircraft, is directly responsible for its operation, and has final authority as to its operation." *Redhead v. United States*, 686 F.2d 178, 182 (3d Cir. 1982); *see also* 14 C.F.R. § 1.1 (defining "pilot in command"). That is the case here.

**B.      Contributory Negligence**

A further hurdle: even if Garland was negligent, the Estates' claim fails on contributory negligence. Contributory negligence consists of "(1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury." *Proffitt v. Gosnell*, 809 S.E.2d 200, 204 (N.C. Ct. App. 2017) (cleaned up). If proved, the doctrine "completely bars plaintiff's recovery for injuries resulting from defendant's negligence." *Sawyer v. Food Lion, Inc.*, 549 S.E.2d 867, 869 (N.C. Ct. App. 2001).

The District Court determined that Apfelbaum's logbooks showed that he failed to fly the number of non-visual flights required by federal law. *See* 14 C.F.R § 61.57(c). And several pilots warned him against flying in non-visual conditions without a co-pilot. Indeed, Apfelbaum asked another pilot to fly to Florida with him for "safety." (App. at 562.) The District Court's finding was not clearly erroneous.

Nor does the doctrine of "last clear chance" revive the Estates' claim. *See Outlaw v. Johnson*, 660 S.E.2d 550, 556 (N.C. Ct. App. 2008) (allowing a contributorily negligent plaintiff to recover "where the defendant's negligence . . . introduces a new element" which "becomes the direct and proximate cause of the accident" (cleaned up)). The Estates allege that the accident could have been avoided if Garland simply told Apfelbaum to ascend "above the clouds." (Opening Br. at 17.) But they failed to show that Apfelbaum would have been able to comply, given that Apfelbaum failed to climb to 4,000 feet when instructed.

6

**C.      Expert Testimony**

At trial, the Estates offered Dr. Pruchnicki as an expert in "cognitive engineering, human factors, and spatial disorientation." (App. at 583.) But the District Court found Dr. Pruchnicki's purported methodology unreliable and excluded his testimony. The Estates then introduced Mr. Sommer, who relied on Dr. Pruchnicki's excluded methodology, leading the District Court to preclude his spatial disorientation testimony.

This was not an abuse of discretion. To survive Rule 702's reliability standard, expert testimony "must be based on the methods and procedures of science, not on subjective belief and unsupported speculation." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80–81 (3d Cir. 2017) (citation omitted). Mr. Sommer did not analyze what type of spatial disorientation Apfelbaum may have experienced. Rather, he deferred to Dr. Pruchnicki's excluded methodology.[5] And the Estates' counsel acknowledged— repeatedly—that Mr. Sommer was not offered as a spatial disorientation expert. (App. at 803, 804, 894.) So, excluding Mr. Sommer's testimony was not improper.

**III.**

While the Apfelbaum plane crash was tragic, the Estates did not show that Garland was the cause. So we will affirm the District Court's entry of judgment on partial findings.

---

[5] The Estates did not appeal the exclusion of Dr. Pruchnicki's testimony.